Good morning, Your Honors, and may it please the Court, Johnny Snodis on behalf of Veenaben and Ajay Patel, who are here in the courtroom today with their two U.S. citizen children, their extended U.S. citizen family members, and numerous friends they've made during their 29 years in this country. I'd like to reserve three minutes for rebuttal. I'll try to help you out, but keep your eye on the clock as well, please. Thank you, Your Honor. Petitioners primarily challenge an unlawful USCIS policy memorandum that was used to bar them from adjusting the status for a reason that does not exist within the Immigration and Nationality Act. The adjustment statute at 8 U.S.C. 1255 is complex and elaborate. It sets out numerous eligibility requirements and specifically states at subsection C-4 that visa waiver entrants who are immediate relatives are eligible for adjusting the status. Nowhere within 1255 or any other provision within the INA for that matter does it state Before we can get to the merits, we have to satisfy ourselves that we have jurisdiction to decide the substantive issues that you're referring to. So the government says that we don't. Why don't you address jurisdiction and tell us why we can even address any of this? Certainly, Your Honor. Your Honor, the district court wrongly found that our claims are inextricably linked to petitioners' removal orders. The district court's finding that 1252A5 is implicated stems from USCIS's erroneous decisions linking the removal orders to petitioners' eligibility for adjustment of status. But 1255 and no other provision within the INA makes clear that an unexecuted removal order that ICE has chosen not to enforce does not render a person ineligible for adjustment of status and does not prevent USCIS from granting an application. None of the causes of action advanced by petitioners address the procedure or substance of ICE's removal orders. But there's three potential jurisdictional objections. I mean, there's A5, which is a channeling provision. There's G, which also says that no court shall have jurisdiction to hear any cause or claim on behalf of any alien arising from any decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders. And then there's also A2, B1, which bars review of any judgment regarding the granting of relief under Section 245 or 1255. Right, Your Honor. Beginning with 1252A5, none of the causes of action challenge the procedure or substance of ICE's removal orders. All that the petitioner is asking this court to do is to adjudicate USCIS's erroneous decision. So even if we accept your argument that all you're seeking for is adjudication, and then so therefore it's not really inextricably intertwined with the underlying orders of removal, then you'd then run into a G problem under our Rauda v. Jennings case, right? Essentially, it's been permissible under G. So how do you get around that? Well, G, Your Honor, as the Supreme Court said in ADC, is a narrow provision. And if we think about the causes of action as they arose in this case, petitioner's cause of action for their adjustment-related claims occurred in September 2019. That's four months before ICE sought to execute the removal orders. And so there's no connection between the adjustment-related claims and ICE's discretionary decision in January. But are you seeking to postpone the removal? Your Honor, what we sought was a stay to preserve the status quo so that the court could adjudicate the claims. Not a postponement of the removal. That means the removal will not take place and will be postponed. Well, Your Honor, the Supreme Court in Ken stated that courts have the inherent authority to issue a stay to preserve a status quo. And the adjustment-related claims, again, they arose four months before ICE called petitioners in for removal. And if we look at this court's decision, Wong v. USCIS, there's clear authority that holds if a cause of action arises before one of the three discrete discretionary actions takes place, it's not tied up with 1252G. It seems to me to be a distinction without a difference under the particular circumstances of this case. But because your time is short, let me have you address another, I think, pretty significant problem for your clients, which is if we deem that we have jurisdiction and that A5 and G is not a problem, why isn't this a Momenni situation? It seems analogous to me. Your Honor, Momenni actually is not on all fours with this case. The claims that were presented in Momenni were diametrically opposed to what petitioners claim here. In Momenni, the petitioner sought review of ICE's decision to issue the removal order and asked the district court to vacate ICE's removal order. Those are not claims that petitioners bring. Momenni did not consider what would occur when a petitioner seeks adjustment of status affirmatively from USCIS at a time when ICE is not seeking their removal. This case is much more akin to Freeman. And just like the petitioner in Freeman had right to a proper consideration of her adjustment application, so do petitioners. What makes this case so unique is the way that petitioners and the immigration agencies have interacted over the years. In 2018, eight years after the removal orders became final and eight years after ICE did not detain or seek to remove petitioners, petitioners through counsel communicated with ICE that they would be seeking adjustment of status, and ICE permitted that to happen. From there, USCIS received their applications, accepted the filing fees, granted them work authorization. They were treated more than just mere visitors. Let me slow you down because I want to make sure that I didn't miss your argument here, because I thought that there really had not been an argument that you fall within the Freeman exception, which is a very, very narrow exception that your clients are not subject to the rule at all on the basis that they're not at all subject to the waiver regime. Why are they not subject to the waiver regime? What arguments did you make in that regard? And where can I find those arguments in the record? Your Honor, the waiver regime, as we addressed in our opening brief and in our reply brief, the no contest clause at 1187B2, only restricts the right to a regular removal hearing before an immigration judge where an immigration judge determines deportability or inadmissibility. The waiver is to regular removal proceedings as defined by 8 U.S.C. 1229A. The legislative history backs up this reading of 1187B2. Congress stated that a visa waiver entrant gives up the right to a normal deportation hearing and the procedures that go along with it, but that's as far as the no contest clause goes. INS interpreted the statute when it issued the Form I-94, which is the document visa waiver entrants actually sign when they come into the country. And as the Fifth Circuit noted in Noes v. Attorney General, that waiver document said, I give up my right to a deportation hearing before an immigration judge where my inadmissibility or deportability would be determined. We know that the government agreed with this interpretation at least until 2010, when the government filed its opposition to Bradley's petition for cert before the Supreme Court. There, the Solicitor General clearly said 1187B2 only applies within the context of a removal proceeding. It restricts the normal rights of a removal proceeding, and that is that there is no conflict with 1255, which still permits a visa waiver entrant to seek adjustment status affirmatively from USCIS. Well, we would only be able to get to the issue about the scope of the waiver under INA 217B if we have jurisdiction. Is that right? That's correct, Your Honor, and our position is that jurisdiction exists. I've explained. You have the one you haven't addressed yet is A2B1. Yes. Which was just construed by the Supreme Court in the Patel case. Right. In the removal context. Tell me why you think that that doesn't bar jurisdiction here. There's three reasons why Patel doesn't alter prior circuit precedent on whether 1252A2BI bars district court review or not. In Mamagonian, this court held that it didn't. First, Patel is limited to a factual challenge to the denial of discretionary relief in removal proceedings. The Supreme Court specifically did not decide whether A2BI applies outside the removal context. And we know that in 2021, the Supreme Court decided. They reserved that because they didn't have it in front of them, but they construed what A2BI means. And we have to take what they said and carry it forward. So the fact they didn't answer the question doesn't mean we don't have to answer it, taking into account what they said. Well, the Supreme Court used the word might. They didn't actually hold that A2BI applies beyond the removal context. Well, it can't have a different – the words mean what they mean. And they're going to apply, you know, according to the Supreme Court's terms in whatever context. Your Honor, this circuit has stated in Miller v. Gammie that in order for Pryor Circuit precedent to be clearly irreconcilable with an intervening authority, there has to be an extremely high threshold that's met, and that threshold is not met here. In Mamagonian – But they – I mean, there's nothing in A2BI that limits the bar on jurisdiction to removal proceedings. And the Supreme Court construed the phrase judgment regarding the granting of relief, which we had construed very narrowly, and it construed very broadly. And we now have to apply that change in the law. There are two other reasons that this court pointed out in Mamagonian. First, the court said that A2D's inclusion within 1252A2 did not serve to simultaneously bar district court review of legal and constitutional claims. And at the time of the – Where does that come from, that there's no bar on legal and constitutional claims? That comes from Mamagonian. And also, we see that reasoning just this last month in Vega v. USCIS. Where does that come from in the statute? Jurisdiction ultimately has to be approved in the statute. Where does the authority to address legal and constitutional claims? Because normally that comes from D, but D does only apply to removal proceedings and doesn't apply to district court proceedings. Right, and what this court said in Mamagonian is that because there wasn't another provision permitting a petition for review of a decision that's not a removal order, A2D didn't have the simultaneous effect of barring legal and constitutional claims in district court. And with the Real ID Act amendments, Congress knew of this court's precedent in Montero-Martinez, holding that legal and constitutional claims could be adjudicated in district court. And if we look at the structure of 1252, it's clear that it's focused on removal proceedings. But one final point, Your Honor. Just last month in Vega v. USCIS, which the government cited in the 28J, but we actually believe is quite helpful for petitioners. This court considered whether 1252A2Bii would preclude review of a challenge to a denial of a waiver under 1182D3. And although the outcome for the petitioner in that case was unfavorable, what the court said is that A2Bii would not bar review of a challenge to a statute that sets out eligibility criteria and that has a clear justiciable standard. 1255 does have those eligibility criteria. The court went on to explain that if the statute qualifies in any way agency discretion, A2Bii did not bar review. And we know from the Supreme Court in Kukana that A2Bii and A2Bii are to be read harmoniously because they're sister provisions and judgment, decision, and action are of the same genre. They're of a like kind. And so if A2Bii does not bar review of a legal and constitutional claim, that applies with equal force to A2Bii, Your Honor. And I'll use the rest of my time for rebuttal. Thank you. Can I ask you? Oh. You have a motion. Mr. Korman has a question. You have a motion pending. Well, I can ask the government whether they object to take judicial notice. The government did submit an opposition, Your Honor, on Tuesday or Monday of this week. I believe we filed a reply yesterday morning. I didn't see that. And the other question that I have is would you have any objection to submitting the case to mediation? If the court wanted to send this case to mediation, absolutely not. We would be open to that for sure, Your Honor. Thank you. May it please the court? If I could ask you, would you be open to mediation? I would have to consult with my clients again, but I'm happy to get back to the court on that, should the court so request. All right. Why don't you file something with the court? I'm sorry? File something with the court to notify us. Okay. Will do. Thank you, Your Honor. May it please the court? Catherine Shinners appearing on behalf of Respondents Appellees. This court should affirm the district court's dismissal of the petitioner's claims because petitioners, Mr. and Mrs. Patel, expressly waived any right to contest removal other than through an asylum claim when they entered under the visa waiver. That issue, I mean, in response to my question, your opposing counsel conceded that we can't reach that issue, which you started with, unless we have jurisdiction. But I thought the government's position was that we didn't have jurisdiction, so it seems like that comes first. That's correct, Your Honor. The jurisdictional question does come first, although they are intertwined to some degree. But, yes, the district court correctly held that the Patel's claims effectively challenged their removal, and thus they're barred both by Congress's bar on collateral tax to removal under 1252A5 and under 1252G, as well as the visa waiver program's no contest provision. But, yes, the jurisdictional question comes first. But I would like to note that recognizing the Patel's claims in this matter would inflict a significant blow to the visa waiver program's no contest provision. But turning to the jurisdictional bars, I think that, as Your Honor's rightly recognized, the question here is, if they're not – either the Patels are challenging the validity of their removal order, or they're challenging ICE's discretionary decision to execute that admittedly valid removal order. They can't have it both ways. Either they're saying, you can't remove me now, which is effectively saying it's not valid right now, while I have an adjustment application pending, while I have yet to pursue the provisional waiver application process, or you cannot execute the removal order, which they admit has no defects and is valid. So, either 1252A5 or 1252G bar the review of their claims, because their claims are all raised in defense to removal and all challenge their removal order in some fashion. In the government's view, which is more applicable, the A5 or the G provision, given the way that they've characterized their claims in this case? Or A2, B1. Well, I think we would look at 1252G primarily. If you look at the wording of their claims and the nature of the relief they seek, they're seeking a stay of removal pending their re-adjudication of their adjustment application, and they are challenged. What's weird about this case is, you know, we normally look at a claim by looking at the claim, not by looking at some sort of collateral relief that's sought on the side. So, you know, some of the claims, as they explain, don't directly attack the removal order and the validity of it. But it's the stay that is alongside the claims being asserted that triggers G. So, I mean, if they were to take the stay away, it would seem the claims wouldn't be barred, although I understand practically that might defeat the claim. I think several of their claims expressly also challenge ICE's decision to execute their removal order now. Some of them, but there are some that don't seem to do so directly, but they're accompanied with a collateral request for a stay that does trigger the jurisdiction. So, I'm a little bit confused about, is it the stay request that is jurisdictionally barred or the claim itself? I think that the request to stay removal is inseparable here in this case from the relief that is sought regarding re-adjudication of adjustment. Is it correct that the claims that they point to as not directly attacking the removal, that those would be mooted or defeated if the removal order was executed? If the removal order was executed, they would no longer be eligible for adjustment status, which applies to individuals in the United States, or no longer be able to apply for adjustment status, which applies to individuals who are in the United States. They would pursue consular processing. And so, any remaining claims that had not been squarely jurisdictionally barred as attacking the removal would then be moot or meritless? Right, which is why Momeni makes an equivalence between using adjustment of status or raising adjustment of status as a defense to removal, which is what petitioners have done in this case with their claims. What's your response to their reliance on Mamagonian? Well, initially, the government believes that the bars on collateral tax removal apply here. But if the court were to reach the question of 1252A2B Romanet 1, Mamagonian, petitioners cite it for the distinction, they say, between discretionary and nondiscretionary decisions relating to adjustment of status. And that distinction has been overruled by the Supreme Court's decision in Patel v. Garland, which holds in interpreting 1252A2B Romanet 1 that any judgment relating to a decision on adjustment of status falls within that limitation on judicial review. It expressly overrules Mamagonian's reasoning, which petitioners did not mention. But the reasoning of Mamagonian, the reason they said judgment only applied to actions or decisions that involve an exercise of discretion, was based on the interpretation of the word judgment. It wasn't based on A2D. It was based on an interpretation of the word judgment as meaning, in Mamagonian's view, or in the panel in Mamagonian's view, a decision involving an exercise of discretion. And that is precisely the interpretation that was proffered by the government, in fact, in Patel v. Garland, in which the Supreme Court rejected. In that way, Mamagonian and that distinction, I should say, that distinction in Mamagonian was based on the court's interpretation in Montero-Martinez initially. So we have to look back to Montero-Martinez. But Mamagonian relied on that reasoning as applied to USCIS decisions. In that way, obviously, the reasoning, the interpretation of 1232A2B, Roman at 1, that was in this court's prior case law, is clearly irreconcilable with the Supreme Court's interpretation of the same language in Patel v. Garland. So what's the status then in the government's view of the ability to address constitutional claims and questions of law with respect to matters covered by A2B1? A2B1, as interpreted by the Supreme Court in Patel v. Garland, does not preclude judicial review of all questions or all decisions concerning or relating to adjustment applications. And it does not carve out constitutional claims or questions of law. However, in this case, we don't actually have any colorable constitutional claims or truly legal questions. But there is no carve out in the context of A2B1. And that is because we are outside of the removal context in this case. So D doesn't apply to kick them back in? Correct. Now, in this case, the fact that the petitioners either no longer have procedures available to contest removal is a result of having entered under the Visa Waiver Program. And NEPFR, they did file an untimely PFR long ago, but NEPFR that they had available to them within the confines of the Visa Waiver Program, they've since exhausted those procedures. And thus, the fact that A2D doesn't apply here is as a result of the fact that they entered as part of the Visa Waiver Program and no longer have any access to a petition for review. I didn't read your letter because it came in so late in opposition to the motion to take judicial notice. What is the significance of those documents that we're asked to take judicial notice in terms of the issues of this case? The reason for the government's opposition to the motion to supplement the record or take judicial notice was simply because the government maintains that those documents that were submitted are not necessary to affirm the dismissal of the district court. And they relate more to the merits of the claims which are not before the court regarding whether or not the petitioners may pursue unlawful provisional presence or provisional unlawful presence waivers. While we disagree that they show eligibility for the provisional unlawful presence waiver, the point is that those documents are just not necessary to resolution of this appeal. There's no need. You don't question their authenticity? At this time, I have no reason to question the authenticity of the documents, but they do not establish what petitioner claims. Now the government's, I'm just trying to understand the government's position changed to one that's unfavorable, but just quickly to the petitioner when Donald Trump was elected president. In terms of the government retains discretion as to whether and when to execute a removal order. Isn't there a statute that says that a removal order is supposed to be executed within 90 days? Does the department regularly just kind of ignore that? That wasn't part of the briefing, Your Honor, but there. Again, the decision as to whether or not to execute a valid removal order and when is within the government's discretion. I believe that statute does relate to mandatory detention. Well, no. What it says is except as otherwise provided in this section, when an alien is ordered removed, the attorney general shall remove the alien from the United States within a period of 90 days. And then it has, you know, exceptions listed to it. And I've seen this before in other cases, but I guess it's apparent the department thinks that it can just, that that is kind of hortatory and it could just ignore it. It apparently never does it. Well, I'm assuming that the department sets enforcement priorities, and that's been the case through multiple administrations. Am I correct in assuming based on this record that at some point enforcement priorities changed with regard to the petitioners? I mean, I think the answer is that. Enforcement priorities do change. I can't answer the question as to what precisely happened in this case. The issue of the government does retain the exercise, does retain the discretion as to whether or when and when to execute a removal order. And it's that discretionary decision that the petitioners are challenging here. And I would like to point out, too, that just as you know. Well, what's the remedy for the statutory failure to follow the statute that Judge Collins just read to you? I would note that this is not an argument that has been raised by the appellants in this matter. And I would like further opportunity to address that specifically. No one ever has standing to raise it because the alien always wants to stay. And if the government thumbs its nose at Congress's direction, nobody can come in and do anything about it. And I think that, again, I mean, I think as the courts have recognized, Sixth Circuit recognized in Hamama, that does not matter as to whether or not you can actually challenge the removal. I mean, that's the answer to the question. And I don't think petitioners are seeking a remedy for that. Shouldn't there be some sort of an estoppel? When you take a look at the facts of this case, they cry out for some sort of discretionary action on the part of the attorney general. I mean, he's been here since 1994. I think some of my law clerks weren't born by then. And to toss him out of the country right now, given all the extenuating circumstances, seems to me to be terribly prejudicial. I'm talking about it in terms of kind of an estoppel argument. We recognize that there is no estoppel claim against the government regarding this exercise of discretion. And the claims still fall within the bar to review under 1232G. If 1232G were not enforced in this matter or in other matters, it essentially would defeat the purposes of Congress as far as collateral tax on removals, because then those who are subject to orders of removal could continue to raise challenges to the execution of that removal order, long after they've exhausted the processes that have been provided and are available to them, regardless of what program they are under. And for that reason, 1232G rightly precludes those kind of challenges to execution of a removal order. Thank you, Counsel. Thank you. Very briefly, Your Honor. The petitioners do have reliance interests here, based on the fact that they forewent reestablishing their lives abroad. Their children grew up… Do they use reliance interest arguments? We do use reliance interest arguments, Your Honor. We actually cite Chang v. INS, and all of the considerations that the court cited in Chang apply equally to petitioners. They were permitted to stay in the U.S. Their children grew up here. They own a business. They own a home. They're well-known in their community as being charitable individuals, and they had at least the minimum expectation that their applications would be lawfully adjudicated. I have a question, just factually about the… Because I looked at the record of the prior proceedings in this court, and they filed a… I mean, years after the fact, they filed a petition for review challenging the BIA's 2012 decision. And this court issued an order to show cause on jurisdiction, and then multiple extensions were sought over and over. And then they never responded to it, and it was just… That kept a stay in place, but why was no response ever filed? What was going on in that whole proceeding that a stay was drawn out and nothing was ever filed, and the thing was just dismissed? I'm not entirely sure, Your Honor. I know that petitioners through former counsel had communication with ICE, and that they communicated with ICE in 2018 that they would seek adjustment of status, and ICE permitted them to do so. And if I can real briefly touch on it. I mean, my point is that it really seemed to be an abuse of the process because it was no valid basis, no conceivable jurisdictional basis for filing that. There's a 30-day deadline in the statute, and it was filed years later, and the court asked, well, what is this? And it seemed that it was used to get a stay when there was absolutely no legal grounds to do it. Well, Your Honor, ICE made separate determinations not to remove petitioners, rather, you know, irrespective of the petition for review that was filed. And I would mention that none of the claims brought in this case could actually have been dealt with in that petition for review. All of these claims arose years after the removal orders became final. They're wholly collateral to the asylum-only proceedings that petitioners were eligible for in immigration court. And one final thing, Your Honor. If there were not jurisdiction to review this claim, there would be a suspension clause violation. There's no adequate means for petitioners to get review of any of their claims. I mean, how is this within the jurisdiction or scope of habeas corpus, the kind of relief they're seeking under thurigisium? Well, DHS versus thurigisium, Your Honor, only dealt with the writ as it existed in 1789. And Justice Alito, in the majority opinion, said several times that it was an as-applied claim, dealing with an individual who had not actually entered the United States, did not have ties here. And Justice Breyer's concurrence explained also that habeas is not a static concept. Habeas has always been seen as flexible. Did the majority attack that aspect of Justice Breyer's opinion in a footnote? Well, the majority also said, though, that the parties did not ask the court to look at the writ as it has evolved. And so it was focused on the writ in 1789. Since then, there has been an evolution. And individuals with ties like the ties that petitioners have do have more rights within the suspension clause and also within due process to fair review. And, again, all of the reliance interests here that were engendered in petitioners would be eviscerated if there were no review. Essentially, USCIS could make a determination that a parking ticket is a crime involving moral turpitude and thus deny adjustment of status, or jaywalking is a terrorism-related conviction. Or that they're simply not going to grant green cards for people from a particular country and then turn around and point to 1252 and tell the court there's no jurisdiction to review. That cannot be. There has to be some adequate, meaningful way for them to get judicial review. And we don't think that there's any jurisdictional problems in this case. And if there were, there would be a suspension clause violation. All right. Thank you very much, counsel, to both sides for your very helpful arguments today. The matter is submitted.
judges: NGUYEN, COLLINS, Korman